# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN M. RAMOS | : | |
| | : | CIVIL ACTION NO. 3:16-0949 |
| **Plaintiff** | : | |
| | : | **(MANNION, D.J.)** |
| v. | : | **(MEHALCHICK, M.J.)** |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration[1] | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Pending before the court is the report and recommendation of Magistrate Judge Karoline Mehalchick, (Doc. 16), which recommends that the plaintiff's appeal from the final decision of the Commissioner of the Social Security Administration ("Commissioner") be denied and that the Commissioner's decision be affirmed. Judge Mehalchick reviewed the record in this case pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3) to determine whether substantial evidence exists to support the Commissioner's decision denying the plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. *See*

---

[1] Under Federal Rule of Civil Procedure 25(d), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in this suit in place of former Acting Commissioner Carolyn W. Colvin.

42 U.S.C. §§401-433, 1381-1383f. The plaintiff, Juan M. Ramos, filed objections to Judge Mehalchick's report and recommendation. (Doc. 17). The Commissioner, in turn, responded to the plaintiff's objections. (Doc. 21).

This matter has been fully briefed and is now ripe for disposition. For the following reasons, the report and recommendation is **ADOPTED**, and the plaintiff's appeal of the Commissioner's decision is **DENIED**.

I.    **STANDARD OF REVIEW**

When objections are timely filed to the report and recommendation of a magistrate judge, the district court reviews *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue,* 649 F.3d 193, 195 (3d Cir. 2011). Although the standard of review is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the magistrate judge's recommendations to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D. Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes. *See also Univac Dental Co. v. Dentsply*

*Int'l, Inc.*, 702 F.Supp.2d 465, 469 (M.D. Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every report and recommendation)). Nonetheless, regardless of whether or not timely objections are made to the report, the district court may accept, not accept, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3).

In reviewing the denial of disability benefits, the court must determine whether the denial is supported by "substantial evidence." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence "does not mean a large or considerable amount of evidence but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnask v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative . . . finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court is "not permitted to weigh the evidence or

substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002) (citing *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992)). Moreover, in determining whether the administrative law judge's ("ALJ") decision is supported by substantial evidence, the court may not parse the record but rather should scrutinize the "entire record" as a whole. *Smith v. Califano,* 637 F.2d 968, 971 (3d Cir. 1981).

## II.   DISABILITY EVALUATION PROCEDURE

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Furthermore, a claimant will be deemed to be disabled only if the claimant's "physical or mental impairment or impairments are of such severity that [the claimant] is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the claimant], or whether [the

claimant] would be hired if [the claimant] applied for work." *Id.* §423(d)(2)(A). "Work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

The regulations implementing these standards further define a five-step sequential evaluation process to assess whether a claimant is "disabled" as the term is defined in the Social Security Act. 20 C.F.R. §§404.1520(a), 416.920(a). Under this procedure, the Commissioner must determine: (1) whether the claimant is engaged in a substantial gainful work activity; (2) whether the claimant's impairment is severe; (3) whether the severity of the claimant's impairment meets or equals that of an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's residual functional capacity ("RFC") would permit the claimant to perform past relevant work activities; and (5) whether the claimant can nonetheless perform any other type of work existing in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. *See id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from performing past relevant work, but once the claimant has established at step four that he or she cannot perform past relevant work, the burden shifts to the Commissioner

at step five to show that jobs exist in significant numbers in the national economy that the claimant could still perform. *Id.* §§404.1512, 416.912.

## III.  BACKGROUND

As set forth more fully in Judge Mehalchick's report,[2] the plaintiff filed applications for benefits under Titles II and XVI of the Social Security Act on February 21, 2013, alleging that he had become disabled due to hypertension and kidney problems as early as July 1, 2011. (Doc. 6-3, at 2; Doc. 6-5). On May 10, 2013, the plaintiff's claims were denied at the initial level of administrative review when an adjudicator determined that the plaintiff was capable of performing his past relevant work. (Doc. 6-3). The plaintiff thereafter filed a timely request for a hearing before an ALJ; this hearing, at which the plaintiff appeared *pro se*, was held on August 5, 2014. (Doc. 6-2, at 26; Doc. 6-4, at 11-15).

---

[2] The court notes that the plaintiff objected broadly and generally to "certain factual findings and omissions" in Judge Mehalchick's report without specifying the particular factual findings to which the objection was raised. (Doc. 17, at 2). Ordinarily, "[t]o obtain a *de novo* determination of a magistrate [judge's] findings by a district court, 28 U.S.C. §636(b)(1) requires both timely *and specific* objections to the report." Goney v. Clark, 749 F.2d 5, 6 (3d Cir. 1984) (emphasis added). While the plaintiff's objection lacked the requisite specificity, the relevant facts are nonetheless restated herein for the sake of clarity and completion.

At step one of the sequential evaluation process, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the July 1, 2011 onset date. (Doc. 6-2, at 15). At step two, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments during the relevant period: stage III kidney disease, nephrosclerosis, hypertension, and a history of myocardial infarction. (*Id.*). At step three, the ALJ found that during the relevant period, the plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (Doc. 6-2, at 16).

Between steps three and four, the ALJ assessed the plaintiff's RFC as having the ability to perform the full range of light work, as defined in 20 C.F.R. §§404.1567(b) and 416.967(b), by examining the relevant evidence. (Doc. 6-2, at 16-19). In reaching this determination, the ALJ considered the plaintiff's claims that his impairments caused him to feel nauseous and that his medication made him feel drowsy and dizzy. (Doc. 6-2, at 17). The ALJ found that while the plaintiff's impairments and medications could reasonably be expected to cause the alleged symptoms, the plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (*Id.*). The ALJ further determined that that the plaintiff's kidney disease was in stable condition and that he had recovered well from his

myocardial infarction. (*Id.* at 18). The plaintiff himself reported that he had no difficulty maintaining his personal care, including preparing meals, doing laundry, shopping for groceries, and handling money. (*Id.* at 19).

As part of this RFC assessment, the ALJ also weighed medical opinions by non-treating physical consultative examiner Thomas McLaughlin ("Dr. McLaughlin") and non-examining state agency medical consultant David Hutz ("Dr. Hutz"). (Doc. 6-2, at 18-19; Doc. 6-3, at 7-19; Doc. 6-8, at 4-19). Both Dr. McLaughlin and Dr. Hutz concluded that the plaintiff had a RFC allowing for the performance of work at or near the "medium" exertional level. Specifically, Dr. McLaughlin opined that the plaintiff could lift or carry up to one hundred pounds occasionally, fifty pounds frequently, and twenty pounds continuously; Dr. Hutz determined that the plaintiff could lift or carry up to fifty pounds occasionally and twenty-five pounds frequently. (Doc. 6-2, at 18; Doc. 6-3, at 7-18; Doc. 6-8, at 11-16). The ALJ, however, afforded these opinions little weight, finding them to be inconsistent with the plaintiff's medical impairments, especially considering the plaintiff's established history of heart attack and elevated blood pressure. (Doc. 6-2, at 18-19). The ALJ noted that Dr. McLaughlin's opinion failed to consider the plaintiff's complaints of dizziness and fatigue caused by his medications. (*Id.* at 18). As such, the ALJ ultimately

found that, during the relevant period, the plaintiff had the RFC to perform the full range of light exertional work. (*Id.* at 16).

The ALJ denied the plaintiff's claims for disability benefits at step four of the sequential evaluation process in a written decision dated January 29, 2015, concluding that the plaintiff was capable of performing his past relevant work as an x-ray technician despite the fact that his RFC limited him to performing light exertional work. (Doc. 6-2, at 16-20). In reaching this conclusion, the ALJ relied on the testimony of Vocational Expert ("VE") Nadine Henzes, who stated that work as an x-ray technician, as it is generally performed, is classified at the light exertional work level. (Doc. 6-2, at 19, 42-43). While the VE testified that the plaintiff actually performed his prior work at the heavy exertional level, she noted that an individual with the plaintiff's assessed RFC would still be able to work as an x-ray technician as such work is generally performed in the national economy. (*Id.*). The ALJ thus determined at step four that the plaintiff was not disabled because he was capable of performing his past work as it is generally performed. (*Id.* at 19-20).

On February 23, 2015, the plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review. (*Id.* at 9). The Appeals Council denied his request for review on

March 22, 2016, affirming the ALJ's decision as the final decision of the Commissioner, subject only to judicial review. (*Id.* at 2-6).

The plaintiff initiated this action by filing a *pro se* complaint on May 20, 2016, alleging that the ALJ's decision was based on facts not supported by substantial evidence in the record. (Doc. 1, at 3-4). Judge Mehalchick thereafter issued her report, recommending that the Commissioner's decision be affirmed. (Doc. 16).

## IV. DISCUSSION

The plaintiff objects to two main conclusions from Judge Mehalchick's report: (1) that the ALJ's assessment that the plaintiff has a RFC permitting a full range of light work is supported by substantial evidence, and (2) that the ALJ's finding that the plaintiff has the ability to perform past relevant work is supported by substantial evidence. (Doc. 17, at 2). The court will address each objection to the report and recommendation in turn.

### A. RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT

The plaintiff first argues that the evidence of record does not support a RFC assessment of light exertional work. (*Id.* at 3-6). Specifically, the plaintiff asserts that the ALJ substituted his own judgment in place of the evidentiary record to arrive at an "arbitrary . . . compromise" RFC assessment that is

unsupported by substantial evidence. (*Id.* at 5). In making this point, the plaintiff further claims that the ALJ did not clearly delineate the grounds upon which his RFC assessment was based and that, after discrediting the opinions of Dr. McLaughlin and Dr. Hutz, there was no evidence upon which this decision could have been based. (*Id.*).

The relevant inquiry is whether the ALJ's RFC assessment was supported by substantial evidence. "The ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "The ALJ must consider all relevant evidence when determining an individual's [RFC] in step four." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). Such evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Id.*

Here, the ALJ's assessment that the plaintiff has a RFC of light exertional work was indeed supported by substantial evidence, and the ALJ conducted a comprehensive review of the evidentiary record before arriving at his RFC determination. First, the ALJ evaluated the medical records documenting the plaintiff's myocardial infarction and his subsequent medical

treatment following that incident. (Doc. 6-2, at 17). Specifically, the ALJ factored in and considered records pertaining to the plaintiff's hospitalization dated July 15, 2011, his emergency room visit for blood pressure issues dated September 8, 2011, his visit to his primary care physician dated February 24, 2012, his referral to a nephrologist based on his elevated creatinine levels dated March 23, 2012, and his follow-up visit dated July 27, 2012. (*Id.*). In sum, this group of medical records indicated that the plaintiff had elevated blood pressure, but the plaintiff himself claimed that his high blood pressure was due to the fact that he had not been exercising regularly. (*Id.*).

Next, the ALJ considered medical records documenting the plaintiff's evaluations by a nephrology specialist. (*Id.*). At a visit dated October 2, 2012, diagnostic testing revealed findings consistent with stage III kidney disease, but the plaintiff denied any feelings of malaise, nausea, or localized weakness. (*Id.*). Treatment records dated January 8, 2013 indicated that the plaintiff was diagnosed with hypertensive nephrosclerosis and that his medications were subsequently adjusted. (*Id.*). However, blood work revealed that the plaintiff's renal function was otherwise stable, and the plaintiff denied experiencing any chest pain, shortness of breath, nausea, or vomiting. (*Id.*).

Additional evidence to support the ALJ's RFC assessment was found in records documenting the plaintiff's emergency room visits on February 28,

2013 and April 18, 2013, both of which resulted in alterations to the plaintiff's blood pressure medication regimen. (*Id.* at 18). Around this time, the plaintiff reported some dizziness after taking his medication but denied experiencing any nausea, chest pain, or shortness of breath. (*Id.*).

This lengthy series of medical reports, in itself, would be enough for the ALJ's RFC assessment of light exertional work to rest upon the requisite substantial evidence. These records alone indicate that while some side-effects of the plaintiff's medications and previous medical episodes persisted, he had recovered well and was in a stable condition. (*Id.*). Such findings are at least consistent with an assessed RFC of light exertional work.

In light of this, the fact that the ALJ assigned little weight to the opinions of Dr. McLaughlin, Dr. Hutz, and even the plaintiff himself does not preclude a finding that the ALJ's RFC assessment was predicated on substantial evidence. (Doc. 16, at 12). It is well-established that "[i]n making a [RFC] determination, the ALJ must consider all evidence before him." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Such evidence includes both "allegations of pain and other subjective symptoms" as well as "objective medical evidence." *Id.* at 122. As the fact finder, the ALJ also has the right to make credibility determinations on various components of the evidentiary

record and can even "reject . . . testimony entirely" so long as the ALJ states adequate reasons for doing so. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). Even a treating physician's opinion can be rejected based on contradictory medical evidence. *See Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).

The ALJ here sufficiently explained his credibility determinations, and Judge Mehalchick, in turn, identified the substantial evidence supporting these determinations. (Doc. 6-2, at 16-19; Doc. 16, at 13-16). For instance, the plaintiff relied exclusively on his own grievances to substantiate the severity of his dizziness and fatigue without providing any evidence of how these symptoms resulted in serious functional limitations. (Doc. 6-2, at 17-18; Doc. 7, at 10-11). Side effects from medication such as drowsiness "should not be viewed as disabling unless the record references serious functional limitations." *Burns*, 312 F.3d at 131. None of the plaintiff's treating physicians identified any functional limitations on the plaintiff's ability to work. (Doc. 16, at 14). Notably, the record also reveals that, after the onset of his illnesses, the plaintiff continued to engage in a full range of daily activities, such as maintaining personal care, preparing meals, doing laundry, shopping for groceries, and handling money. (Doc. 6-2, at 19; Doc. 6-6, at 16-20). Given the availability of such evidence, the ALJ did not err in discounting the

plaintiff's statements concerning the intensity, persistence, and limiting effects of his medical symptoms. Judge Mehalchick's report also explained that the plaintiff failed to point to any evidence supporting greater limitations than those assessed by the ALJ. (Doc. 16, at 14-15).

Similarly, the ALJ's decision to give little weight to the opinions of Dr. McLaughlin and Dr. Hutz was supported by substantial evidence. The ALJ stated on the record that he discredited these opinions precisely because he believed them to be inconsistent with the plaintiff's established medical impairments. (Doc. 6-2, at 18-19). In fact, had the ALJ taken these doctors' opinions at face value, the plaintiff's assessed RFC likely would have been even less advantageous to his overall claims for DIB and SSI because both doctors believed that the plaintiff could tolerate more physical exertion than light work. (*Id.*). Ultimately, these opinions were at least consistent with the ALJ's RFC assessment of light work, and they comprised only one of many pieces of evidence supporting the ALJ's RFC analysis.

Contrary to the plaintiff's assertions, therefore, the ALJ did delineate the evidence upon which his RFC assessment was based, and the RFC assessment was not an "arbitrary . . . compromise." (Doc. 6-2, at 16-19; Doc. 17, at 4). The ALJ adequately and reasonably explained his conclusion that the plaintiff could perform the full range of light work despite his established

medical history, and he carefully detailed the bases upon which this RFC assessment was predicated. Moreover, the ALJ's assignment of little weight to the opinions of non-treating physicians Dr. McLaughlin and Dr. Hutz does not undermine the RFC determination. Even if these opinions were excluded from the record entirely, the evidence used to reach this RFC determination was still substantial. On this basis, the plaintiff's objection to Judge Mehalchick's report is overruled.

## B. ABILITY TO PERFORM PAST RELEVANT WORK

The plaintiff's second objection to Judge Mehalchick's report asserts that the record lacks substantial evidence to support the ALJ's finding that the plaintiff could perform his past relevant work as it is generally performed in the national economy. (Doc. 17, at 6-13). In making this point, the plaintiff attempts to argue that the VE's hearing testimony did not support a finding that the plaintiff could perform his past relevant work as it is generally performed. (Doc. 16, at 17). As noted in Judge Mehalchick's report, the applicable regulations provide that an ALJ may give weight to a VE's expert opinion testimony when determining whether a claimant can perform his or her past relevant work, either as the claimant actually performed said work or as it is generally performed in the national economy. (Doc. 16, at 16). *See* 20 C.F.R. §§404.1560(b)(2), 416.960(b)(2).

Here, the ALJ posed two hypothetical questions to the VE that were of consequence in the ALJ's determinations at steps four and five of the five-step sequential evaluation process. (Doc. 6-2, at 42-43). The first question involved a hypothetical claimant with the same age, education, and experience as the plaintiff who performed work at the medium exertional level but was able to be off-task for twenty percent of his workday and take extended breaks at least twice daily. (*Id.* at 42). To this question, the VE responded that the plaintiff would not be able to return to his past relevant work under these conditions as such work is generally performed. (*Id.*). The second question involved a hypothetical claimant with the same age, education, and experience as the plaintiff who performed work at the light exertional level but could not use ropes, ladders, or scaffolds and could not work in close proximity to dangerous conditions or machinery. (*Id.* at 42-43). To this question, the VE replied that the plaintiff could return to his past relevant work under these conditions as such work is generally performed. (*Id.* at 43). The plaintiff now contends that the ALJ's second question to the VE failed to consider or account for "any of [the] plaintiff's symptoms and complaints," thus rendering the VE's response to this question irrelevant. (Doc. 17, at 9).

Hypothetical questions posed to a VE "must reflect all of a claimant's impairments" that are credibly established by the evidentiary record. *Burns,*

312 F.3d at 123 (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). *See also Rutherford*, 399 F.3d at 555 (3d Cir. 2005) (noting that an ALJ need only convey to the VE the claimant's credibly established impairments); *Chrupcala*, 829 F.2d at 1276 (concluding that an ALJ's hypothetical questions need only include those impairments supported by the record). As Judge Mehalchick indicated in her report, however, there is not merely one single method by which an ALJ could account for occupational limitations caused by dizziness and fatigue in a hypothetical question to a VE. (Doc. 16, at 18).

Here, the ALJ accounted for the plaintiff's credibly established impairments in both hypothetical questions. (Doc. 6-2, at 42-43). In the first question, this occurred by stipulating that the claimant could be off-task for part of the day and take two extended breaks; in the second question, this occurred by reducing the claimant from medium to light exertional work and adding several postural and environmental limitations. (*Id.*). The plaintiff alleges that the second question made no provision for considering his established impairments, but in fact, the ALJ altered the hypothetical to include both light work and further workplace restrictions. (Doc. 16, at 18-19; Doc. 17, at 10). These alterations were sufficient to account for the plaintiff's impairments in the second question.

In this regard, it is also worth noting that there is no evidence in the record to establish that the plaintiff's medical symptoms were of such a nature that including the limitations from the first hypothetical question would be the only feasible or fair way to account for the plaintiff's workplace restrictions. (Doc. 16, at 19). As such, the ALJ was under no obligation to include in the second hypothetical question the more restrictive requirements that the plaintiff be permitted to be off-task for twenty percent of the day and take multiple additional breaks. While the plaintiff contends that the severity of his impairments warranted the inclusion of these requirements in the second question, he fails to address the fact that the severity of his impairments could be factored into a hypothetical question through many alternative avenues. (Doc. 17, at 11-12). Judge Mehalchick thus properly determined that the record as a whole did not necessitate including these requirements in the second hypothetical question, explaining that the ALJ's restriction to light work with additional postural and environmental limitations fully accounted for the plaintiff's credibly established medical symptoms. (Doc. 16, at 18-20).

The ALJ's own remarks during the hearing lend further support to this conclusion. (Doc. 6-2, at 43-45). Specifically, the ALJ attempted to clarify the meaning of his hypothetical questions by noting that the reduction from medium to light exertional work was intended to account for both the plaintiff's

age and his testimony regarding his alleged impairments. (*Id.* at 43; Doc. 16, at 20). Judge Mehalchick correctly points out that other courts within the Third Circuit have previously concluded that limitations of light exertional work, along with certain postural and environmental limitations, can sufficiently account for a claimant's symptoms of dizziness and fatigue caused by medication, especially when the ALJ reasonably finds that the intensity, persistence, and limiting effects of those symptoms are not fully credible. (Doc. 16, at 19). *See Aldrich v. Colvin*, No. 3:13-CV-1292, 2014 WL 888507, at *11, *14 (M.D. Pa. Mar. 6, 2014); *Rodriguez v. Barnhart*, No. 02-CV-017-KAJ, 2004 WL 393142, at *8 (D. Del. Feb. 25, 2004). This is precisely the hypothetical that the VE confronted in the instant action before determining that an individual with the plaintiff's assessed RFC would be able to work as an x-ray technician as such work is generally performed in the national economy. (Doc. 6-2, at 19, 42-43). Judge Mehalchick appropriately determined that the ALJ's reliance on this hypothetical was reasonable, that the hypothetical did consider all of the plaintiff's credibly-established impairments, and that substantial evidence existed to support the ALJ's conclusion. (Doc. 6-2, at 19-20).

"Where the ALJ's findings of fact are supported by substantial evidence, [the court is] bound by those findings, even if [the court] would have decided

the factual inquiry differently." *Fargnoli, 247 F.3d at 38* (citing *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir.1999)). "No principle of administrative law or common sense requires [the court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen, 869 F.2d 1055, 1057 (3d Cir. 1989).* For these reasons, the plaintiff's objection to Judge Mehalchick's report is overruled.

## V.  CONCLUSION

In light of the foregoing, Judge Mehalchick's report and recommendation, (Doc. 16), is **ADOPTED**, the plaintiff's objections to the report and recommendation, (Doc. 17), are **OVERRULED**, and the plaintiff's appeal, (Doc. 1), is **DENIED**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September  29, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0949-01.docx